UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

JOSE BLAS,
        PETITIONER,

      V.

UNITED STATES OF AMERICA,
        RESPONDENT.

CIVIL NUMBER:

CRIMINAL NUMBER: 8:02-CR-115-T-27-EAJ

## MEMORANDUM AND ARGUMENT IN SUPPORT PURSUANT TO 28 U.S.C. § 2255 MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Now comes Petitioner, Jose Blas, acting Pro Se, in the above captioned case humbly submitting this memorandum and argument in support of his 28 U.S.C. § 2255 motion.

## STATEMENT OF JURISDICTION

Petitioner Pleaded Guilty for three counts on
December 16, 2002, for violation of Title 18 U.S.C. § 2422(b)
Count One, 18 U.S.C. § 2423(b) Count Two and 18 U.S.C. § 2422(b)
Count Three, in the United States District Court for the
Middle District of Florida before the Honorable District Court
Judge James D. Whittemore, under indictment criminal case
number 8:02-CR-115-T-27-EAJ.

On December 16, 2002, Petitioner was sentenced Count One
to 180 months, Count Two to 180 months and Count Three to
70 months of imprisonment, all counts ran concurrent with
three-year supervised release, $300.00 special assessment fee,
a fine of $15,000.00 and a restitution amount of $86.00.

Petitioner filed to extend time for filing notice of
appeal on February 13, 2003.

Petitioner filed for an extension of time to file a
notice of Direct Appeal because counsel failed to file with-
in the 10 day period allowed on February 13, 2003. The Direct
Appeal was allowed by the 11th Circuit Court of Appeals.

The court ordered on April 16, 2003, granting motion
for appointment of counsel for appeal purposes and appointed
David J. Joffe, Esquired for the defendent under the Criminal
Justice Act. Signed by Magistrate Judge Elizabeth A. Jenkins.

Petitioner's counsel filed notice of Direct Appeal to
the United States Court of Appeals for the Eleventh Circuit.
The appeal within the 11th Circuit was denied on February 19,
2004, before the Honorable Judges panel of Carnes, Hull and
Wilson, Circuit Judges.

It is asserted that the District Court for the Middle District of Florida has jurisdiction to review a final conviction in the District in which the Petitioner was convicted and sentenced.

Pursuant to 28 U.S.C. § 2255, and the Constitution of the United States of America as the District Court for the Middle District of Florida has jurisdiction over the initial matter pursuant to Federal indictment returned in said District pursuant to 18 U.S.C. § 3231.

Petitioner is currently serving his 180 months sentence imprisonment in the custody of the Federal Bureau of Prisons at F.M.C. Devens, in Ayer, Massachusetts where he is being housed and medically treated.

Whereas, final judgement was rendered on February 19, 2004, the Petitioner has until February 19, 2005 to file timely 28 U.S.C. § 2255, which states " A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of the date on which the judgement of conviction becomes final."

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

I.   Whether the prosecutor breached the Petitioner's infor-
mation of the indictment at sentencing when the Assistant
U.S. Attorney recommended the enhancements without giving an
advance notice before the petitioner plead to the information.

II. Whether the probation officer made a Plain Error when he
enhanced the Petitioner by 4 levels on Count One 18 U.S.C.
§ 2422(b), Count Two 18 U.S.C. § 2423(b) of Group One and
when the probation officer used preponderance of evidence to
enhance petitioner by 4 levels on Count Three U.S.C. § 2422(b),
after formerly being grouped together.

III.  Whether the Judge abused of his authority when he al-
lowed the Petitioner to plead to the information on the in-
dictment without giving him an advance notice that the peti-
tioner would be enhanced on aggravated circumstances and
preponderance of evidence not on the indictment would be a
Plain Error.

IV.  Whether both counsels were ineffective when they allowed
the Petitioner to Plead Guilty to the information in the in-
dictment without any discovery of a potential enhancements or
having the Pre-Sentence Information Report (P.S.I.) before
pleading to the information.

V.   Whether the Petitioner's sentence is in Error when he was
sentenced to 180 months on Count One and Two and 70 months on
Count Three by aggravating circumstances and without an
advance notice of any enhancements before pleading to the
information of the indictment.

## STATEMENT OF THE CASE

On or about April 11, 2002, the Federal Bureau of Investigation arrest Petitioner on a warrant issued by Hillsborough and Pinellas County in the Middle District of Florida. A search warrant was executed on apartment 2B at 113-11 76th Rd., Forest Hills, New York by the Easter District of New York.

On May 1, 2002, the Petitioner appeared before the Magistrate Judge Robert M. Levy to accept conditions for release on Bond in the Eastern District of New York.

On May 8, 2002, the Petitioner appeared before the Magistrate Judge Elizabeth A. Jenkins of the Middle District of Florida for arraignment and petitioner Pled Not Guilty.

On May 17, 2002, the Petitioner's Order of Bond was revoked and detained pursuant to 18 U.S.C. § 3142(e) by the Honorable Judge James D. Whittemore in the Middle District of Florida.

On August 29, 2002, the Petitioner held a Change of Plea Hearing before the Magistrate Judge Elizabeth A. Jenkins in the Middle District of Florida and Plead Guilty to Count (1) 18 U.S.C. § 2422(b), Count (2) 18 U.S.C. § 2423(b) and Count (3) 18 U.S.C. § 2422(b).

On December 16, 2002, the Petitioner appeared before the Honorable District Judge James D. Whittemore to be sentence in the Middle District of Florida. Petitioner was sentenced to serve 180 months as to Count (1) 18 U.S.C. § 2422(b) and Count (2) 18 U.S.C. § 2423(b) and 70 months as to Count (3)

18 U.S.C. § 2422(b). All counts to run concurrent with 36 months of Supervised Release: Fine: $15,000.00; Restitution of $86.00 and Special Assessment of $300.00.

Petitioner filed on or about February 13, 2003, for extend time on Notice of Appeal.

On April 16, 2003, David J. Joffe, Esquire is appointed as counsel for Petitioner under the Criminal Justice Act for purpose of appeal. Also, granting motion for Kenneth S. Siegel to withdraw as co-counsel and granting motion for Trevor L.F. Headley to withdraw as counsel, signed by Magistrate Judge Elizabeth A. Jenkins.

On February 19, 2004, the Honorable Circuit Judges Carnes, Hull and Wilson of the U.S. Court of Appeals (11th Cir.), Affirmed the decision of the District Court.

## STATEMENT OF FACTS

The Petitioner was arrested on or about April 11, 2002, by the Federal Bureau of Investigation, pursuant to the execution of a search warrant from the Hillsborough and Pinellas Count of the Middle District of Florida. The search warrant was for 113-11 76th Rd., apartment 2B, in Forest Hills, New York. The petitioner was subsequently charged with the offenses of 18 U.S.C. §2422(b), 18 U.S.C. § 2423(b) and 18 U.S.C. § 2422(b). The petitioner was released on $500,000.00 unsecured bond.

The petitioner was using his computer on an evening after work. In need of conversing with someone because of his recent mother's death, recent divorce and being depressed. Petitioner logged on to a public chat service called "Paltalk". This service allowed him to communicate with his existing friends and to meet new friends. While petitioner was about to chat with one of his friends, a random instant message flashed on his computer terminal displaying, "Hi, I'm Kristen want to chat?" Petitioner clicked on the message profile to read the general information about the individual before accepting the chat. The profile list items such as screen name, sex, address, hobbies and a comment area. The comment on Kristen's profile caught the petitioner's eyes since it stated that she was looking for a lesbian since all the men she had did not satisfy her. Petitioner clicked respond to message and replied to Kristen's instant message, "Yes, I'm available for chat." Petitioner introduced himself as follow: 5'10",

170lbs, green eyes, age 18 and asked, 'What is with your mes-
sage in the comment area?" Kristen replied, I thought you
were a female. Petitioner asked Kristen about her comment on
the profile if it was read and she replied, yes. Petitioner
then replied, if you ever get to know me, I'm quite sure you
would change your mind. After chatting for awhile, the peti-
tioner signed off. The next day, petitioner was chatting
with another friend from work and Kristen interrupted his
existing chat by saying, "hello again, want to chat?" Peti-
tioner replied, in a couple of minutes, I'm busy now. Kristen
replied, message me when you're not busy. Petitioner replied,
ok later. The time passed and both petitioner and Kristen
were not able to chat. By the end of the second week chatting
on the service "Paltalk", petitioner told Kristen that his age
was 47. He also asked her if his age bother her? Kristen re-
plied, age is just a number and your are as old as my parents
but that it was alright with her. So, the petitioner and
Kristen continue to meet more frequently. After chatting for
several months the petitioner and Kristen agreed to meet on
December 8, 2001, and she then gave petitioner her address and
phone number. On Monday, December 3, 2001, petitioner called
Kristen. Petitioner after talking for a couple of minutes in-
formed Kristen that his flight tickets were received and that
everything was set. Kristen replied that she was glad. Peti-
tioner told her that before he would meet her this weekend
that he needed to tell her something. Kristen asked, what was
it? Petitioner told Kristen that he was HIV positive and that
he needed to wear a condom for protection. He also asked,

how did she feel about this? Kristen replied, it was alright as long as the petitioner use the condom. Petitioner asked Kristen if she still wanted to see him and she replied, yes.

The petitioner arrived to Tampa, Florida on December 7, 2001, and stayed at the La Quinta Motel that Friday through Sunday. On Saturday, December 8, 2001, the petitioner called Kristen around noon time but she did not answer the phone. Five minutes later after petitioner hanged up, the phone ranged. When the petitioner picked up the phone and answered by asking who it was she replied, it's me Kristen. Petitioner was surprised since he had not given her the phone number to his room yet. Petitioner asked how did she get the number? Kristen replied, I have my ways of finding things out. Petitioner assumed Kristen had used *69 phone option which allows the party being called to callback the party which placed the call. At this point Kristen told the petitioner to pick her up at her home and that she would be waiting for him outside her house. The petitioner left using the travel instructions from Kristen to arrive to her house one hour later around 1PM by using the rental car. When petitioner arrived to Kristen's house, she was sitting on the front steps waiting. Petitioner approached her and parked the car in front of her house. Petitioner identified himself as Joe and said hello while, Kristen came to the car with a smile and as she opened the passenger side front door she said hello and placed her art pad on the front seat. Then, she said she was going to tell her step-dad that we were both leaving now. After a minute,

-6-

Kristen returned to the vehicle, opened the front passenger door again and sat inside the car and gave the petitioner a welcome hug and kiss. Petitioner asked what did Kristen tell her step-dad and she replied, I told him that we were going to study together with her other friends. Petitioner asked why did she say that and she replied, don't worry, I have said this before and my step-dad and I have a good understanding with eachother. Since the petitioner had never travelled in Tampa before, he relied on Kristen's instructions in order to travel throgh Pinellas County. Then, petitioner asked Kristen if she would like to have something to eat and she replied, yes. As they both drove on the petitioner saw a Denny's Diner and asked Kristen if she wanted to eat at Denny's? Kristen agreed to eat there. After parking the car, petitioner and Kristen rushed inside to the diner since it was raining hard. Once inside the diner they were given a sitting table. After an hour, they finished eating, paid for the service and started back on their plans. Petitioner asked if Kristen wanted to go to the motel now and she replied, yes. After an half hour of driving, petitioner found La Quinta Motel with Kristen assistance and parked the rental car in the parking area. Petitioner and Kristen entered the room on the first floor. Once inside, the petitioner turned on the lights and they both sat on the side of the bed. After spending sometime hugging, kissing, fondling and exchanging some words, Kristen said that she had waited a long time for this moment and started to undress petitioner. At this point, petitioner told her that they should first shower and she said

-7-

alright. After completing the shower, both the petitioner
and Kristen approached the bed and sat on the edge of the bed.
Now, petitioner told Kristen again that he was HIV positive
and needed to wear a condom for protection and in order to have
safe-sex. Petitioner asked if she felt comfortable and Kristen
responded that she understood and did not mind the petitioner
wearing a condom. She also said, that petitioner made it
easier for her because she was about to ask petitioner to
wear a condom too. After being naked in bed for half hour
fondling and in the heat of passion, the petitioner got up
from the bed and retrieved a Trojan condom (on of the best
brands) from the package inside the carrying luggage bag and
opened one individual packet to place the condom on. Now the
petitioner and Kristen were having consensual, safe-sex through
the vagina. Afterward, both petitioner and Kristen became
hungry and decided to go outside to have dinner. After
driving for fifteen minutes, petitioner found a Red Lobster
and asked Kristen if she wanted to eat there and she replied,
yes. Service was slow in Red Lobster and a hour had passed
once they finished their dinner. Now petitioner and Kristen
returned to the motel room since they both agreed they wanted
to have another sexual encounter. During this second encounter
the shower was skipped. Again, after spending some time hugging,
kissing and fondling eachother, the petitioner got up from
the bed and pulled out another packet of Trojan condom and
placed it on. After returning to the bed, Kristen was waiting
for petitioner and they both started to have consensual, safe-
sex. Afterwar, they took a shower together and decide to go

out and see a movie. After dressing up, Kristen asked peti-
tioner if she could call her house? Petitioner replied, of
course you can. While petitioner was in the bathroom combing
his hair, Kristen called her step-dad to let him know that
everything was alright since it was about 6PM. Kristen call-
ed home and spoke with her step-dad. After talking to him for
a couple of minutes, Kristen caught petitioner's attention so
that he may talk to her step-dad. When petitioner spoke with
Kristen's step-dad on the phone, petitioner told the step-dad
that he was a friend of Kristen's friend. The step-dad asked
if Kristen had been all day with him and petitioner replied,
yes. The step-dad asked when his daughter was returning home
and petitioner replied, we were just getting ready to go back
home now. The step-dad asked how long will it take and peti-
tioner replied, in about a half hour. Then, petitioner gave
the phone back to Kristen and she told her step-dad, I will
see you shortly, bye. Both the petitioner and Kristen got
ready to leave. Petitioner and Kristen walked back to the
car and drove back to Kristen's house. When petitioner and
Kristen arrived at the house, the step-dad was outside speak-
ing with someone on a cordless phone. Petitioner drove to the
front of the trailer home, parked the car and said good-bye
to Kristen. Petitioner waited a moment to see if the step-
dad wanted to speak with him. After petitioner waited and
saw that Kristen step-dad just continued to talk on the cord-
less phone and made no gesture in wanting to talk to petition-
er, petitioner waved goodbye again to Kristen and returned
back to the motel.

The next day, Sunday December 9, 2001, petitioner returned the rental car at the airport and took his flight back to New York via Jetblue Airways.

Three months later, on or about March 28, 2002, petitioner was arrested by the F.B.I. in the Eastern District of New York.

On may 1, 2002, petitioner was released on Bond of $500,000.00 and complying with conditions of House Arrest.

Petitioner on his own accord, made two travel arraignments in order to fly from New York to Florida. The first trip was to have an Initial Appearance on May 8, 2002 before Magistrate Judge Elizabeth A. Jenkins in reference to Bond Hearing and Arraignment. Petitioner pled not guilty on this day. The second trip on May 17, 2002, petitioner appeared before Judge James D. Whittemore in the Middle District of Florida in reponse to the government's motion for review and revocation of petitioner's order of release. On this day, petitioner was detained and taken by the U.S. Marshal to the county jail.

On August 29, 2002, the petitioner was taken from Morgan County Jail by U.S. Marshals to the Middle District Florida Court and appeared before the Magistrate Judge Elizabeth A. Jenkins and Pled Guilty to Count (1) 18 U.S.C. § 2422(b), Count (2) 18 U.S.C. § 2423(b) and Count (3) 18 U.S.C. § 2422(b). During the plea colloguy the Magistrate Judge, Elizabeth A. Jenkins noticed in reviewing the penalties for the conviction under Count One that the list of penalties from the government were not present (see Change of Plea Proceedings Page 13,

-10-

lines 13-15).

The prosecutor breached the petitioner's information of the indictment at sentencing when the Assistant U.S. Attorney recommended the enhancements without giving an advance notice that the government intended to enhance the petitioner on aggravated circumstances that were not on the indictment of the information.

The probation officer made a **PLAIN ERROR** when he enhanced the petitioner on Count One, 18 U.S.C. § 2422(b) and Count Two, 18 U.S.C. § 2423(b) after formerly being grouped together because they involved the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan (see P.S.I., Page 5, line 35).

The probation officer made a **PLAIN ERROR** when using preponderance of evidence to enhance Petitioner by 2 levels for undue influence on victim to engage in prohibited sexual conduct where there was no victim impact or meeting face to face nor did the victim testify to the extent.

The Judge abused of his authority when he allowed the Petitioner to plead to the information of the indictment without giving the petitioner an advance notice that he would be enhanced on aggravated circumstances not in the information of the indictment. Victim 1, (Kristen) was not physically harmed, or tortured, nor contracted any sexually transmitted disease from petitioner's acts. Thereby, the aggravated circumstances were not justified.

The counsels were ineffective when they allowed the Petitioner to Plead Guilty to the information in the indictment without any discovery of an enhancement or having the P.S.I. present before pleading. Counsel failed to investigate the complaint filed by the police officer who interviewed the victim (Kristen) in Count One and Two. Again, in Count Three the counsels failed to investigate the validity of the facts for Victim 2 (Amanda). Counsels did not bother to retrieve any A.O.L. Online information from the Paltalk chat service that would prove without a doubt that petitioner no longer had any intentions to meet with Amanda. This fact alone was crucial in proving that petitioner was not going to commit the same act again.

## SUMMARY OF ARGUMENTS

1. At sentencing the Assistant U.S. Attorney breached the Petitioner's information of the indictment by recommending enhancements without giving an advance notice before the petitioner plead to the information.

2. The probation office made a **PLAIN ERROR** when he enhanced the Petitioner by 4 levels on Count One 18 U.S.C. § 2422(b), Count Two 18 U.S.C. § 2423(b) of Group One and when the probation officer used preponderance of evidence to enhance petitioner by 4 levels on Count Three 18 U.S.C. § 2422(b), after formerly being grouped together.

3. At sentencing the Judge abused his authority by allowing Petitioner to plea to the information on the indictment without prior notice of being enhanced on aggravated circumstances and preponderance of evidence not on the indictment would be a **PLAIN ERROR**.

4. At sentencing both counsels were ineffective at pleading and sentencing by allowing Petitioner, Blas to plead guilty to the information in the indictment without any discovery of enhancements or having the P.S.I. before pleading to the information.

5. The Petitioner, Jose Blas, sentence is in error when he was sentenced to 180 months on Count One and Two and 70 months on Count Three by aggravating circumstances and with no prior notice of enhancements before pleading to the information of the indictment.

## ARGUMENT 1

At sentencing the Assistant U.S. Attorney breached the
Petitioner's information of the indictment by recommending
enhancements without giving an advance notice before the
petitioner plead to the information.

The Assistant U.S. Attorney breached the information of
the indictment when the petitioner Pleaded Guilty **ONLY** to
the information in the indictment, when the Assistant U.S.
Attorney did not give petitioner advance notice that peti-
tioner would be enhanced for misrepresentation of partici-
pant's identity, the use of a computer or internet access
device, participant unduly influenced the victim and for-
feiture of property violating petitioner's Due Process rights
pursuant to rule 11a. Causing petitioner to pleaded unknow-
ingly and unintelligently, to the information only and
making his indictment defective. See U.S. v Dubo, 186
F.3d 1177 (9th Cir. 1999), and Neder v U.S., 527 U.S.1, 119
S.Ct. 1827, 144 L.ED. 2d 35 (1999), the Supreme Court and the
Ninth Circuit, determined that the indictment must plead to
specific statutory language in each of the charges filed
against the defendant. As such, there is specific language
in each statute that must be identified to put a defendant
on proper notice of what constitutes the charge of the
grand jury.

In the Neder, the Supreme Court established materiality
as an essential element of mail fraud requiring that the
specifics of mail fraud be pled accordingly.

In the U.S. v Dubo, supra, the indictment completely
failed to allege an essential element of the charged offense.
The court stated this was not a minor technical flaw subject
to harmless error analysis, but a fatal flaw requiring dis-
missal of the entire indictment. See Jones v U.S., 119
S.Ct. 1215(1999), also see: Apprendi v New Jersey, S.Ct.
No. 99-478 6/26/2000, that would be a jurisdiction defect
in the indictment based on Apprendi, the Due Process clause
of the 5th and 14th Amendment required that the goverment
to prove the essential elements of crime beyond a reasonable
doubt. See: Winship, 397 U.S. 358, 364(1970). Additionally,
the government must allege all elements of a crime in the
indictment.

The Supreme Court reaffirm the holding in Apprendi:
Any fact (other than a prior conviction) which is necessary
to support a sentence exceeding the maximum authorized by the
facts established by a plea of guilty or a jury verdict
must be admitted by the defendant or proved to a jury beyond
a reasonable doubt. This was the opinion in the Supreme
Court decision in the U.S. v Booker.

The probation officer made a **PLAIN ERROR** when he enhanced the Petitioner by 4 levels on Count One 18 U.S.C. §2422(b), Count Two 18 U.S.C. § 2423(b) in Group One and when the probation officer used preponderance of evidence to enhance petitioner by 4 levels on Count Three 18 U.S.C. § 2422(b), after formerly being grouped together.

Offenses are grouped together usually because of likeness or common purpose. Therefore, Count One and Two are grouped under USSG § 3D1.2(b) since they involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan (see P.S.I., Page 5, line 35).

<u>Petitioner's Group One Base Offense Level was 24.</u>

Group One (Counts One and Two)

Petitioner was enhanced for knowing misrepresentation of participant's identity... Accordingly, 2 levels are added, under section USSG § 2A3.2(b)(2)(A).                +2

Petitioner was enhanced for the use of a computer or internet device... Accordingly, 2 levels are added, under section USSG § 2A3.2(b)(3)(A) and (B).          +2

Petitioner's Adjusted Offense Level: (Subtotal)     28

<u>Petitioner's Group Two Base Offense Level was 21.</u>

Group Two (Count Three)

Petitioner was enhanced for unduly influenced the victim to engage in prohibited sexual conduct... Accordingly, 2 levels are added under section USSG § 2A3.2(b)(2)(B).   +2

Petitioner was enhanced for the use of a computer or internet device... Accordingly, 2 levels are added under section USSG § 2A3.2(b)(3)(A) and (B).                    +2

Petitioner's Adjusted Offense Level: (Subtotal)    25

Petitioner states that the 2 point enhancement for Group One and the 2 point enhancement for Group Two, after being grouped into one under section U.S.S.G. § 3D1.2(b), petitioner was only suppose to receive a 2 level enhancement instead of 4.

Application notes to § 2A3.2 say that an upward departure may be appropriate if the petitioner either committed the sexual act in furtherance of a commercial scheme (such as prostitution or the production of pornography) or has a prior conviction for similar sexual conduct. Neither is true of petitioner, Jose Blas. See U.S. v Morris, 204 F.3d 776 (7th Cir. 2000).

Before the date of pleading, the petitioner's lawyer, prosecutor or Judge, all failed to give petitioner an advance notice that they were contemplating on an upward departure for aggravating circumstances.

Petitioner states that the "notice must specifically identify the ground on which the District Court is contemplating an upward departure". The notice must refer not only to the rationale for departure but also the facts that support this theory of departure. See U.S. v Morris, 204 F.3d 776 (7th Cir. 2000).

## ARGUMENT 3

At sentencing the Judge abused his authority by allow-
ing Petitioner to plea to the information on the indictment
without a prior notice of being enhanced on aggravated cir-
cumstances and preponderance of evidence not in the indict-
ment would be a **PLAIN ERROR.**

The Judge abused his authority by allowing a motion for
upward departure at sentencing, knowing that the enhancements
were presented **late** and knowing the enhancements were re-
quired **before** petitioner took the plead or trial. The court
did not provide the parties notice of a potential upward de-
parture. See: Id. Burns, 501 U.S. at 135.

In Petitioner's case the Judge had to find aggravating
circumstances and preponderance of evidence not on the infor-
mation of the indictment before departing upward to 15 years
and 3 years of supervised release.

Granting the government's motion, the Judge determined
to depart upward from the sentencing guidelines that would
otherwise apply in this case. The Judge departed upward 7
levels to level 34, which provides for a minimum of 151
months up to the statutory maximum of 180 months. The Judge
thought the government's motion was appropriately granted
only on Count 1 and 2, dealing with what he referred to as
victim 1.

However, that is not the case. Title 18 U.S.C.A.
§ 3553(b) directs that a court "shall impose a sentence of
the kind, and within the range" established by the Guidelines,
subject to departures in specific, limited cases. Because

they are binding on all on judges, this Court has consistently held that the Guidelines have the force and effect of laws. Further, the availability of a departure where the judge "finds... an aggravating or mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from the described," 3553(b)(1), does not avoid the constitutional issue. Departures are unavailable in most cases because the Commission will have adequately taken all relevant factors into account, and no departure will be legally permissable. In those instances, the judge is legally bound to impose a sentence within the Guidelines range. See Booker's case Number 04-104, illustrates this point. See: Winship, 397 U.S. 358, 364 (1970). Additionally, the government must allege all elements of a crime in the indictment. See also Apprendi v New Jersy, 530 U.S. 466, 490, Blakely V Washington, Ring v Arizona 536 U.S. 584, 592-93 applied Apprendi to Arizona. Sixth Amendment a reservation of jury power.

## ARGUMENT 4

At sentencing both counsels were ineffective at pleading and sentencing by allowing Petitioner, Blas to Plead Guilty to the information in the indictment without any discovery of enhancements or having the P.S.I. before pleading to the information.

First counsel, Kenneth Siegel at pleading to the information of the indictment allowed Petitioner to plead without a plead agreedment or without any discovery or affording petitioner the opportunity to have the P.S.I. report done before pleading to the information of the indictment. Which cause the petitioner to plead to the information unknowingly and unintelligently, not knowing that the petitioner would be facing enhancements for preponderance of the evidence and aggravating circumstances.

At sentencing both counsels, Trevor L.F. Headley and Siegel perform ineffectively by allowing both the government and Judge to enhance petitioner's sentence on P.S.I. from 5 to 7 years to 15 years without an advance notice of an upward departure where the petitioner Pleaded Guilty only to the information in the indictment. The upward departure of 7 levels was based on victim impact.

Counsel, Siegel did not protect petitioner from self-incrimination by wrongly advicing petitioner to take the stand and testify on his own behalf about unknown information that was not on the indictment unknown by the government. In addition, counsel Siegel caused a conflict of interest and violated the petitioner's 5th amendment right to self-incri-

mination.

Both counsels failed to investigate allegations by the victim (Kristen) presented by first officer, Lomonaco. Both counsels neglected to rebuttal the allegations presented to the court when the AUSA stated that "we would have brought victim (Kristen) down but for the fact I think I informed the court in my motion for upward departure she's been in a coma and is brain damaged." The AUSA failed to state the reason of how and what happened to cause the victim, (Kristen) being in a coma, made it appear like petitioner was the cause of her medical condition being in a coma. AUSA was displaying prosecutor misconduct. Both counsels failed to rebuttal the prosecutor's statement knowing the true facts and not bringout that the victim, (Kristen) was out with her friends riding and afterwards they dropped her off on the opposite side of the street from where she resides. Then, when Kristen started to cross the street, she was hit by a car and was taken to the hospital where she remained in a coma. This is why she was not able to testify in her own behalf for the government nor substantiate petitioner's statements that the sex was consensual, that the petitioner did use condoms at all times, that petitioner did tell her that he was 47 years old, that petitioner did inform her that he was HIV positive. Thus, substantiating petitioner's statements.

In reference to victim 2 (Amanda), the counsels failed to investigate, verify and rebuttal the facts presented by the AUSA. Petitioner had informed his counsels that although he did communicate with Amanda, that all his communication with

-21-

her had been ceased by January 31, 2003, when petitioner found
out that Amanda was too immature and was using drugs. If
these facts were brought out to light in the court, the re-
sult of the allege statements by the prosecutor would have
been different. This would instead showed that the petitioner
in fact was not going to repeat the act.

Petitioner's counsels rendered Constitutionally inef-
fective at pleading and sentencing, violating petitioner's
Sixth Amendment rights to effective assistance of counsel.

Petitioner will show that both Treavor L.F. Headley and
Kenneth Siegel using the standards of Strickland v Washington,
466 U.S. 668, 687 (1984), applies to evaluate claims alleg-
ing ineffective assistance of counsels. Also, U.S. v Isom,
85F.3d 831, 837 (1st Cir. 1996), Smullen v U.S., 94F.3d
20-23 (1st Cir. 1996), to succeed the Petitioner must show
that counsel's performance fell below an objective probability
that but for counsel's error, the result of the proceedings
would have been different.

Conflicts with decisions of other court's and Circuit
Court's failure to follow the precedence of its Supreme Court
when invoked.

Petitioner's counsels were responsible for procedural
default, but petitioner cannot be required to "bear the risk
of attorney error that resulted in the procedural default
because counsels was not acting as petitioner's agent with
regard to the default.

Petitioner's defense counsels failed to object to the

-22-

court's constructive amendment to the original indictment and enhancing the petitioner's sentence.

The Supreme Court ruled that a defendant can demonstrate Sixth Amendment violation by showing (1) that defense counsels was actively representing conflicting interest and (2) that the conflict had adverse effect on specific instances of counsel's performance to satisfy the two prong Cuyler test. See: Cuyler v Sullivan, 446 U.S. 335, 64 L.ED. 2d 233, 100 S.Ct. 1708, also in Strickland v Washington, 466 U.S. 668, right to effective assistance of counsel impaired when defense counsel operates under conflict of interest because counsel breaches the duty of loyality, perhaps the most basic of counsel's duties.

Further in Cuyler, 1676 446 U.S. 335 (1980), given this state of affairs a conflict of interest now exist and will continue to exist until this case is resolved in the interest of justice.

If default occurs under these circumstances at pleading or sentencing, a finding of "cause" may be predicated on either of two grounds, (1) that the attorney's refusal to raise a meritorious claim desired by the client constitutes ineffectiveness of counsel, and (2) that the attorney's refusal to comply with client's reasonable wish to raise a particular claim breached the agency relationship between attorney and client, thereby making it unreasonable to impose upon the client the consequences of the attorney's procedural default.

-23-

## ARGUMENT 5

The Petitioner, Jose Blas, sentence is in error when he was sentenced to 180 months on Counts One and Two and 70 months on Count Three by aggravating circumstances and with no prior notice of enhancements before pleading to the information of the indictment.

When Petitioner pleaded, his based total offense level was 27 and a criminal history category of I, the guidelines imprisonment range is 70-87 months (5 years, 10 months - 7 years, 3 months). Instead, petitioner was enhanced upward 7 levels to a level 34, which provides for a minimum of 151 months up to the statutory maximum of 180 months. That is as to Count 1 and 2.

Petitioner argues that he did not receive any prior notice before pleading or trial of any aggravating circumstances for enhancements. This is the foundation of petitioner's argument - for Burns v U.S., 501 U.S. 129, 111 S.Ct. 2182, 115 L.Ed. 2d 123 (1991), holds that notice is essential to any sentence above the norm.

Petitioner states that the notice must refer not only to the rationale for the departure but also to the facts that support this theory of departure. See, e.g., U.S. v Ewing, 129 F.3d 430, 436-37 (7th Cir. 1997).

During sentencing, the Judge stated that the filed motion for upward departure "was filed fairly late." The fact that the AUSA filed for upward departure late and announced the request for enhancements at sentencing can not

be considered as a reasonable notice by the Government. See
U.S. v Morris 204 F.3d 776 (7th Cir. 2000).

Title 18 U.S.C.A. § 3553(b) directs that a court "shall
impose a sentence of the kind, and within the range" estab-
lished by the Guidelines, subject to departures in specific,
limited cases. Because they are binding on all on judges,
this Court has consistently held that the Guidelines have
the force and effect of laws. Further, the availability of
a departure where the judge "finds... an aggravating or miti-
gating circumstances of a kind, or to a degree, not adequate-
ly taken into consideration by the Sentencing Commission in
formulating the guidelines that should result in a sentence
different from that described," 3353(b)(1), does not avoid
the constitutional issue. Departures are unavailable in most
cases because the Commission will have adequately taken all
relevant factors into account, and no departure will be
legally bound to impose a sentence within the Guidelines
range. Booker's case illustrates this point. See U.S. v
Booker No. 04-104.

For the facts stated above, and to be consistent with
Congress' likely intent (1) to preserve the Act's important
pre-existing elements while severing and excising § 3553(b)
and 3742(e) than (2) to maintain all of the Act's provisions
and engraft today's constitutional requirement onto the
statutory scheme. See U.S. v Booker No. 04-104.

## CONCLUSION

Based upon the facts set forth herein and in addition to the authorities cited, the Petitioner moves this Honorable Court whereas, in the interest of justice to take a good look at the Petitioner's claims set forth herein 28 U.S.C. § 2255, to correct, dismiss or resentence the petitioner.

Lastly, Petitioner is a layman at law therefore, relies upon excusable error a Pro Se litigate to not have his motion which is drawn with unearned hands scrutinized for technical excellence practicing that legal counsels are held too.

Respectively Submitted

Pro Se Jose Blas

## CERTIFICATE OF SERVICE

I, Jose Blas/Petitioner, do hereby affirm and attest that I have sent the original and two copies of Petitioner's 28 U.S.C. § 2255 to the United States District Court, Middle District of Florida, Office of the Clerk, United States Courthouse, Tampa, Florida 33602 on this 7th Day of February, 2005, by ways of First Class Mail.

Signed pursuant to 28 U.S.C. § 1746.

JOSE BLAS

REG. #67734-053
FEDERAL MEDICAL CENTER DEVENS
P.O. BOX 879
AYER, MA 01432

-26-